IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. _____

| | | |
|---|---|---|
| EIRIN BRUHEIM and NORDIC LIGHTS FARM, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| MARK J. BELLISSIMO, individually and in his corporate capacity as manager of TRYON HORSE SHOWS, LLC and TRYON SHOWGROUNDS, LLC; ROGER B. SMITH, individually and in his corporate capacity as manager of TRYON HORSE SHOWS, LLC and TRYON SHOWGROUNDS, LLC; TRYON HORSE SHOWS, LLC; and TRYON SHOWGROUNDS, LLC, | ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| Defendants. | ) | |

NOW COME Plaintiffs EIRIN BRUHEIM and NORDIC LIGHTS FARM, LLC (hereinafter collectively referred to as "Plaintiffs"), complaining of Defendants MARK J. BELLISSIMO, ROGER B. SMITH, TRYON HORSE SHOWS, LLC, and TRYON SHOW GROUNDS, LLC, (collectively referred to herein as "Defendants"), and for the following causes of action would respectfully show the Court:

## PARTIES

1. Plaintiff EIRIN BRUHEIM is an individual and resident of Harris County, Texas.

2. Plaintiff NORDIC LIGHTS FARM, LLC is a Texas limited liability company located in Tomball, Harris County, Texas.

3. The members of Plaintiff NORDIC LIGHTS FARM, LLC are residents of Harris County, Texas.

1

4.     Defendant MARK BELLISSIMO is an individual residing in Wellington, Palm Beach County, Florida.  Defendant was and is a Manager of Defendant TRYON HORSE SHOWS, LLC and Defendant TRYON SHOWGROUNDS, LLC.

5.     Defendant ROGER B. SMITH is an individual residing in Rutherfordton, Rutherford County, North Carolina.  Defendant was and is a Manager of Defendant TRYON HORSE SHOWS, LLC and Defendant TRYON SHOWGROUNDS, LLC.

6.     Defendant TRYON HORSE SHOWS, LLC is a North Carolina limited liability company with its principal place of business in Tryon, North Carolina.  This Defendant was and is the producer of the equestrian event described in this Complaint which occurred on July 9, 2015.

7.     Upon information and belief, Defendant TRYON HORSE SHOWS, LLC is comprised of members who are citizens and residents of the States of North Carolina and Florida.

8.     Defendant TRYON SHOWGROUNDS, LLC is a North Carolina company with its principal place of business in Tryon, North Carolina.  This defendant was and is the sole owner of the premises upon which the equestrian event described in this Complaint occurred on July 9, 2015.

9.     Upon information and belief, Defendant TRYON SHOWGROUNDS, LLC is comprised of members who are citizens and residents of the States of North Carolina and Florida.

## JURISDICTION & VENUE

10.     This Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interests and costs.

11.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the acts and omissions occurred in this judicial district; specifically, the equestrian competition and incident giving rise to this lawsuit.

## FACTS

12.     This case arises from an incident that occurred during a July 9, 2015, equestrian competition held in Tryon, North Carolina at the Tryon International Equestrian Center ("Equestrian Center").

13.     Defendants MARK J. BELLISSIMO and ROGER B. SMITH, acting individually and/or in their corporate capacities as managers for Defendants TRYON HORSE SHOWS, LLC and TRYON SHOWGROUNDS, LLC, organized, managed, produced, and operated the premises and the equestrian competition at issue at the Equestrian Center.

14.     Upon information and belief, Defendants jointly controlled the subject premises and the competition.

15.     On or about July 9, 2015, Plaintiff EIRIN BRUHEIM was participating in the July 9, 2015 equestrian competition, specifically a qualifying round of the United States Equestrian Federation ("USEF") Premier-rated, Level 5 jumping competition ("Jumping Competition") at the Equestrian Center.

16.     In order to enter and compete in the Jumping Competition at the Equestrian Center, Plaintiff EIRIN BRUHEIM was required to pay entrance, nominating, and boarding fees in excess

3

of one thousand dollars.

17.     Plaintiff EIRIN BRUHEIM paid the required fees prior to the July 9, 2015 competition.

18.     If Plaintiff EIRIN BRUHEIM did well enough in the qualifying round of the Jumping Competition—which she fully expected to do—she would have advanced to the Grand Prix competition scheduled to begin the following day, on July 10, 2015.

19.     This qualifying round of the Jumping Competition was governed by the USEF General Rules, including GR832 Interruption of Procedure, which provides that:

> If weather appears to be imminently affecting the safety and welfare of horses and/or exhibitors, it shall be the responsibility of competition management…to stop the competition until it is safe to recommence.  If a competition in progress must be stopped due to a storm, accident, or other emergency, the Show Committee will decide whether to re-commence.

20.     This qualifying round of the Jumping Competition was also governed by the USEF Hunter Jumper Rules, including HJ105 "Competition Standards Requirements" that provides, "Adequate and knowledgeable jump crew, in gate, and other personnel to assist in the operation of the competition."

21.     For the safety and well-being of horses and riders, another USEF rule governing the competition prevented the qualifying round of competition scheduled for July 9, 2015 to be on the same day as the Grand Prix competition scheduled to begin on July 10, 2015.

22.     Therefore, if the July 9, 2015, competition was unable to be completed on July 9, 2015, and had to be finished on July 10, 2015, then commencement of the Grand Prix competition would have to be postponed until some day after the qualifying round was finished.

23.     Defendants wanted to avoid this type of disruption to the competition schedule because they would risk losing considerable sums of money from lost entry fees, boarding fees,

spectators, and concessions.

24.     At some point during the day on July 9, 2015, inclement weather rolled into the area of the competition that "imminently affect[ed] the safety and welfare of horses and exhibitors" (including Plaintiff EIRIN BRUHEIM), and one or more of the Defendants stopped competition and instituted a weather delay pursuant to GR832.

25.     An hour or so later, even though the weather had not improved and it still "imminently affect[ed] the safety and welfare of horses and exhibitors" (including Plaintiff EIRIN BRUHEIM), one or more of the Defendants, or their inadequate and/or unknowledgeable personnel, disregarded the safety of the participants by ending the weather delay and ordering the competition to recommence.

26.     If Plaintiff EIRIN BRUHEIM had withdrawn from the competition because of the weather: (a) she may not have qualified for the Grand Prix; (b) she may have lost substantial entry, start, nomination, and boarding fees; (c) she may have lost standing in individual rankings; and (d) her horses may have lost value from not competing and otherwise finishing the month-long competition at Tryon and being shown in the Grand Prix, which is the highest level of competition attracting the largest number of spectators.

27.     So, after waiting for another competitor ahead of her to finish his round after the weather delay, Plaintiff EIRIN BRUHEIM re-entered the ring for her next round of competition.

28.     More than halfway through the round of competition, a combination of lightning, thunder, rain, and wind hit near and inside the arena, causing Plaintiff EIRIN BRUHEIM's horse to spook and react suddenly and uncharacteristically during a technical aspect of the round and topple into the next jump and fall and roll over Plaintiff EIRIN BRUHEIM.

29.     The collision caused serious and continuing head and brain injuries to Plaintiff

5

EIRIN BRUHEIM, as well as serious and continuing emotional and psychological injuries and mental anguish, and as a result, Plaintiff EIRIN BRUHEIM fears that she will never be able to ride horses again.

30.     Prior to the incident, Plaintiff EIRIN BRUHEIM was well on her way to becoming, if she was not already, an international equestrian jumping star.

31.     In August 2010, at the Youth Olympic Games in Singapore, Plaintiff EIRIN BRUHEIM was the only American showjumper to qualify for the Games.

32.     After that successful springboard into international competition at the age of 18, she continued competing and excelling worldwide in international competitions, Grand Prix events, and other 5-Star horse competitions and shows.

33.     By 2015, Plaintiff EIRIN BRUHEIM had joined the Norwegian national team and was preparing to help Norway qualify for the 2016 Olympics in Brazil.

34.     Immediately following the competition at Tryon, Plaintiff EIRIN BRUHEIM intended to compete in the Old Salem Horse Show and Spruce Meadows before traveling to Europe to show in the Global Champions Tour.

35.     All of Plaintiff EIRIN BRUHEIM's past successes and future potential, however, were lost, because Defendants disregarded her safety by recommencing competition despite the dangerously bad weather continuing, which had led Defendants to institute a weather delay only about an hour earlier.

36.     Plaintiff EIRIN BRUHEIM's head and brain injuries were, and continue to be, tragically severe and forever life-changing, and they do not cover her emotional and psychological injuries, including mental anguish, depression, anxiety and panic attacks.

37.     Because of Defendants' negligent disregard for the safety of Plaintiff EIRIN

BRUHEIM and her horse, and the resulting injuries to both, Plaintiff EIRIN BRUHEIM was unable to ride her horse again, and as a direct result, the valuable, high-pedigreed horse lost significant value from not competing or being shown and from the public perception of it as a damaged good.

38.     Prior to her catastrophic injuries, Plaintiff EIRIN BRUHEIM primarily competed on the following three horses:

a.      "Nlf Favorite" who Plaintiff NORDIC LIGHTS FARM, LLC bought in or around September or October 2013 for approximately $1,000,000 EUR;

b.      "Nlf Newsflash", who Plaintiff NORDIC LIGHTS FARM, LLC bought in or around February 2013 for approximately $800,000 USD; and

c.      "Billy On Show", who Plaintiff NORDIC LIGHTS FARM, LLC bought in or around February 2013 for approximately $400,000 USD.

39.     The value of jumping horses is derived in large part from being seen, and winning, in competition.  A jumping horse that is involved in an accident suffers diminished value not only from the physical injuries it sustained in the accident, but also from the horse becoming inactive and absent from competitions.

40.     A jumping horse that is involved in an accident also suffers diminished value from stigma damages from an intangible taint due to it having been involved in an accident.  In other words, the subjective potential by a purchaser of one of the above horses owned by Plaintiff NORDIC LIGHTS FARM, LLC reduces his or her willingness to purchase the horses due to their negative perception of a horse which has been involved in an accident or which has not been ridden or competed on or won a competition in a certain length of time, even if the horses do not have any lasting physical injuries.

41.     Defendants' negligent acts or omissions on July 9, 2015 caused physical and psychological injuries to both Plaintiff EIRIN BRUHEIM and to Plaintiff NORDIC LIGHTS

FARM, LLC's horse "Nlf Favorite," and Plaintiff EIRIN BRUHEIM has never been able to ride horses again because of her injuries.

42. Because Plaintiff EIRIN BRUHEIM has been unable to ride again, "Nlf Favorite", "Nlf Newsflash", and "Billy On Show" were not ridden or competed on with the same frequency or at the same level or with the same success as before the July 9, 2015 accident.

43. Plaintiff NORDIC LIGHTS FARM, LLC has tried to mitigate its damages and sell all three of the horses on which Plaintiff EIRIN BRUHEIM competed. However, Plaintiff NORDIC LIGHTS FARM, LLC has been unsuccessful in finding any interested buyers of "Nlf Favorite" and "Nlf Newsflash," and it sold "Billy On Show" in 2016 for $75,000 USD, which was far below its value before the July 9, 2015 accident.

44. The combination of Nlf Favorite's (a) physical and psychological injuries from the accident, (b) time period after the accident without competing, and (c) negative stigma from the accident, all led to the horse's diminished value and stigma damages suffered by Plaintiff NORDIC LIGHTS FARM, LLC.

45. Plaintiff NORDIC LIGHTS FARM, LLC has similarly suffered a diminished value of its other two horses -- "Nlf Newsflash" and "Billy On Show" -- because of the July 9, 2015 accident and the resulting long period of time after the accident without competing in or winning national and international jumping competitions

46. But for one or more of Defendants' negligence on July 9, 2015, as described above, Plaintiff EIRIN BRUHEIM would have continued competing on Plaintiff NORDIC LIGHTS FARM, LLC's horses—"Nlf Favorite", "Billy On Show", and "Nlf Newsflash"—at the highest level of competition worldwide, and they would have maintained or increased in value from the exposure and/or continued.

47. However, Defendants' negligence on July 9, 2015, as described above, caused (a) permanent physical and psychological injuries to Plaintiff EIRIN BRUHEIM that have prevented her from competing on the horses again, (b) physical and psychological injuries to "Nlf Favorite" that diminished his value and caused him to have stigma damages, and (c) "Nlf Newsflash" and "Billy On Show" to suffer diminished value from a lack of exposure and competition.

48. Plaintiffs would show the Court that the negligent acts and omissions of Defendants, as set out herein, separately and collectively, were a direct and proximate cause of the incident in question and the resulting injuries and damages sustained by Plaintiffs.

## CAUSES OF ACTION AGAINST DEFENDANTS

### COUNT ONE: Negligence

49. Plaintiffs re-allege and adopt by reference the foregoing allegations as if fully set forth herein.

50. At all material times, Defendants TRYON SHOWGROUNDS, LLC owned and controlled the land and facility on which Plaintiff EIRIN BRUHEIM was injured.

51. At all material times, all Defendants controlled the land and facility, on which Plaintiff EIRIN BRUHEIM was injured.

52. At all material times, Defendants TRYON HORSE SHOWS, LLC, MARK J. BELLISSIMO, and ROGER B. SMITH organized, operated, and managed the subject equestrian competition.

53. At the time Plaintiff EIRIN BRUHEIM entered the subject premises, she was participating in a USEF competition governed by the USEF General Rules, including GR832 Interruption of Procedure.

9

54.     This qualifying round of the Jumping Competition was also governed by the USEF Hunter Jumper Rules, including HJ105 "Competition Standards Requirements" that requires "[a]dequate and knowledgeable jump crew, in gate, and other personnel to assist in the operation of the competition."

55.     Plaintiff EIRIN BRUHEIM was an invitee to whom Defendants then owed a duty to exercise ordinary care, including the duty to discover any unreasonably dangerous conditions existing on the premises and the duty to warn Plaintiff of the existence of such dangerous conditions.

56.     More specifically—during and following the weather delay that Defendants instituted earlier on July 9, 2015, and before Defendants re-commenced the competition in which Plaintiff EIRIN BRUHEIM was injured—one or more Defendants had a duty to check the weather forecast, Doppler radar, and other data to determine if unreasonably dangerous weather conditions persisted on their premises, which would "imminently affect the safety and welfare of horses and exhibitors."

57.     One or more Defendants and/or their inadequate and unknowledgeable personnel breached their duty to Plaintiff ERIN BRUHEIM by recommencing competition on July 9, 2015 despite dangerous weather on the premises and forcing competitors to compete in the dangerous weather there.  In doing so, Defendants disregarded Plaintiff ERIN BRUHEIM's safety and caused her injuries and damages.

58.     One or more of the Defendants (as the premises owner of the premises and/or equine activity sponsor and/or equine professional and/or person engaged in an equine activity) either knew or should have known that on or about July 9, 2015, weather was imminently affecting the safety and welfare of Plaintiff EIRIN BRUHEIM and her horse while they were

competing on the premises, yet Defendants chose to disregard the safety of Plaintiff EIRIN BRUHEIM and the other participants by recommencing competition and failing to warn Plaintiff EIRIN BRUHEIM and the other participants of such unreasonably dangerous weather.

59.    Alternatively, even if Plaintiff EIRIN BRUHEIM was aware of the open and obvious weather conditions before she competed, one or more of the Defendants instructed her and other competitors to begin warming up before re-commencement of competition, and Plaintiff EIRIN BRUHEIM was forced to compete in the qualifying round of competition to qualify for the Grand Prix competition scheduled to begin the following day.

60.    One or more of the Defendants should have anticipated that Plaintiff EIRIN BRUHEIM was unable to avoid the unreasonable risks of weather, if she was going to advance to the Grand Prix competition scheduled to begin the following day.

61.    Plaintiff EIRIN BRUHEIM relied on Defendants to her detriment to know, and advise her of, the current weather conditions and weather forecasts during periods of inclement weather in order to know whether it was imminently affecting the safety and welfare of horses and riders.

62.    It was reasonable for Plaintiff EIRIN BRUHEIM to assume that the weather conditions had improved and were no longer dangerous since Defendants had paused competition due to inclement weather but then later lifted the weather delay when conditions allegedly improved.  Defendants were in a better position to know weather conditions than Plaintiff EIRIN BRUHEIM, who was warming up her horse per Defendants' instructions.

63.    In addition, Defendants acted negligently and without justification, by recommencing the competition despite the fact that the weather conditions had not sufficiently improved to permit safe riding.

11

64. By engaging in such negligence, Defendants created a foreseeable zone of risk that posed an unreasonable general threat of harm to those persons, including Plaintiff EIRIN BRUHEIM, who were participating in the subject competition.

65. Defendants' negligence therefore proximately caused Plaintiff to suffer permanent bodily injuries and damages in one or more of the following ways:

    a. Failing to properly maintain the premises in a reasonably safe condition;

    b. Failing to correct the condition (i.e., weather appearing to be imminently affecting the safety and welfare of horses and/or exhibitors) by taking reasonable measures to safeguard persons who entered the Equestrian Center;

    c. Failing to inspect the Equestrian Center where the dangerous condition (i.e., weather appearing to be imminently affecting the safety and welfare of horses and/or exhibitors) existed;

    d. Recommencing the competition despite the fact that the weather had not improved sufficiently to allow the participants to safely compete, thus creating a foreseeable zone of risk that posed an unreasonable threat of harm to those persons participating in the competition;

    e. Failing to provide warnings or warning signs;

    f. Maintaining and/or managing the Equestrian Center in a careless manner; and

    g. Negligence in general.

66. The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the injuries and damages to Plaintiff EIRIN BRUHEIM and Plaintiff NORDIC LIGHTS FARM, LLC.

67. Plaintiffs' damages include, among other elements of loss and damage, the following general and special damages:

    a. Reasonable and necessary medical expenses incurred by EIRIN BRUHEIM in the past;

    b. Reasonable and necessary medical expenses to be incurred by EIRIN BRUHEIM in the future;

c.       Loss of earnings suffered by EIRIN BRUHEIM, past and future;

d.       Pain, suffering, and mental anguish suffered by EIRIN BRUHEIM;

e.       Physical impairment, disability, disfigurement, and loss of capacity for the enjoyment of life suffered by EIRIN BRUHEIM, past and future;

f.       Physical and psychological injuries to Plaintiff NORDIC LIGHTS FARM, LLC's horse "Nlf Favorite;" and

g.       Loss in value, earning capacity, and stigma damages of Plaintiffs' horses, "Nlf Favorite", "Nlf Newsflash", and "Billy On Show."

68.     As a direct and proximate result of Defendants' negligence, Plaintiffs have been damaged as set forth herein and in amounts to be determined at trial.

69.     Plaintiffs are entitled to recover pre-and post-judgment interest at the legal rate from Defendants for the amounts Plaintiffs are entitled to recover for Defendants' negligence.

## COUNT TWO: Negligence Per Se

70.     Plaintiffs re-allege and adopt by reference the foregoing allegations as if fully set forth herein.

71.     Under N.C. Gen. Stat. § 99E-2 (the "Equine Activity Liability" Statute), "…an equine activity sponsor, an equine professional, or any other person engaged in an equine activity, including a corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities… [**_unless_**] the equine activity sponsor, equine professional, or person engaged in an equine activity . . . [c]ommits an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission proximately caused the injury, damage, or death." (emphasis added).  *See* N.C. Gen. Stat. § 99E-2 (a) and (b).

13

72. The Equine Activity Liability Statute also does not shield Defendants from liability when Defendants failed to comply with the warning requirements (signs and contracts) set forth in N.C. Gen. Stat. § 99E-3.

73. At the time Plaintiff EIRIN BRUHEIM entered one or more of Defendants' premises, she was participating in a USEF competition governed by the USEF General Rules, including GR832 Interruption of Procedure.

74. This qualifying round of the Jumping Competition was also governed by the USEF Hunter Jumper Rules, including HJ105 "Competition Standards Requirements" that provides, "Adequate and knowledgeable jump crew, in gate, and other personnel to assist in the operation of the competition."

75. One or more of the Defendants violated the above-referenced rules and statutes governing the competition, and willfully or wantonly disregarded the safety of Plaintiff EIRIN BRUHEIM, when they recommenced the competition after a weather delay even though the weather had not improved and continued to imminently affect Plaintiff EIRIN BRUHEIM's safety and welfare.

76. In addition, one or more of the Defendants failed to have adequate and knowledgeable personnel to assist in the operation of the competition.

77. Adequate and knowledgeable personnel should have researched the current weather conditions and weather forecast and should have known that the weather had not improved and continued to imminently affect Plaintiff EIRIN BRUHEIM's safety and welfare.

78. Alternatively, even if Plaintiff EIRIN BRUHEIM was aware of the open and obvious weather conditions before she competed, one or more of the Defendants instructed her and other competitors to begin warming up before re-commencement of competition, and

Plaintiff EIRIN BRUHEIM was forced to compete in the qualifying round of competition to qualify for the Grand Prix competition scheduled to begin the following day.

79.     One or more of the Defendants should have anticipated that Plaintiff EIRIN BRUHEIM was unable to avoid the unreasonable risks of weather, if she was going to advance to the Grand Prix competition scheduled to begin the following day.

80.     Plaintiff EIRIN BRUHEIM relied on Defendants to her detriment to know, and advise her of, the current weather conditions and weather forecasts during periods of inclement weather in order to know whether it was imminently affecting the safety and welfare of horses and riders.

81.     Defendants' negligence in disregarding Plaintiff's safety proximately caused Plaintiff injuries and damages in one or more of the following ways pursuant to the above-referenced USEF Rules governing the competition and the Equine Activity Liability Statute:

    a.     Recommencing the competition when it was not safe to do so;

    b.     Failing to provide adequate and knowledgeable jump crew, in gate, and other personnel to assist in the operation of the competition;

    c.     Operating and/or managing the subject competition at the Equestrian Center in a reckless and careless manner; and

    d.     Negligence in general.

82.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the injuries and damages to Plaintiff EIRIN BRUHEIM and Plaintiff NORDIC LIGHTS FARM, LLC.

83.     Plaintiffs' damages include, among other elements of loss and damage, the following general and special damages:

    a.     Reasonable and necessary medical expenses incurred by EIRIN BRUHEIM in the

15

past;

b.     Reasonable and necessary medical expenses to be incurred by EIRIN BRUHEIM in the future;

c.     Loss of earnings suffered by EIRIN BRUHEIM, past and future;

d.     Pain, suffering, and mental anguish suffered by EIRIN BRUHEIM;

e.     Physical impairment, disability, disfigurement, and loss of capacity for the enjoyment of life suffered by EIRIN BRUHEIM, past and future;

f.     Physical and psychological injuries to Plaintiff NORDIC LIGHTS FARM, LLC's horse "Nlf Favorite;" and

g.     Loss in value, earning capacity, and stigma damages of Plaintiffs' horses, "Nlf Favorite", "Nlf Newsflash", and "Billy On Show;"

84.     As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs have been damaged as set forth herein and in amounts to be determined at trial.

85.     Plaintiffs are entitled to recover pre-and post-judgment interest at the legal rate from Defendants for the amounts Plaintiffs are entitled to recover for Defendants' negligence *per se*.

## COUNT THREE:  Breach of Implied Contract

86.     Plaintiffs re-allege and adopt by reference the foregoing allegations as if fully set forth herein.

87.     Plaintiffs and Defendants entered into an implied contract requiring Defendants to provide an equestrian event that complied with the USEF General Rules, including, but not limited to, Rule GR832 "Interruption of Procedure" and Rule HJ105 "Competition Standards Requirements," as well as North Carolina law, in exchange for Plaintiff EIRIN BRUHEIM's

payment of an entrance, nominating, and boarding fees on behalf of herself and Plaintiff NORDIC LIGHTS FARM, LLC's horses that competed.

88. Plaintiffs performed their obligations under the implied contract by, among other things, paying the entrance, nominating, and boarding fees in excess of one thousand dollars to compete in the equestrian competition and Jumping Competition.

89. On July 9, 2015, Defendants materially defaulted and failed to perform their obligations owing to Plaintiffs by, among other things, failing to comply with the USEF General Rules, including, but not limited to, Rule GR832 "Interruption of Procedure" and Rule HJ105 "Competition Standards Requirements," as well as North Carolina law, specifically, the North Carolina Equine Activity Liability Statute.

90. As of the date of filing this Complaint, Defendants owe Plaintiffs the sum of the entrance, nominating, boarding and other associated fees in addition to the various damages, including property damages and personal injury damages as set forth herein that Plaintiffs have incurred as a result of Defendants' breach.

91. Despite Plaintiffs' demands, Defendants have failed and refused to tender payment of the obligations at issue in this Complaint.

92. Defendants offer no explanation or justification for their material and substantial breach of the implied contract.

93. All conditions precedent to Plaintiffs' entitlement to recovery under the implied contract have occurred.

94. Plaintiffs are entitled to receive compensatory damages from Defendants' material and substantial breach of the contract.

95.     Plaintiffs' damages include, among other elements of loss and damage, the entrance, nominating, boarding, and other associated fees that Plaintiff EIRIN BRUHEIM paid to enter the competition as well as personal injury damages suffered by Plaintiff as described herein and property damages to Plaintiff NORDIC LIGHTS FARM, LLC's property as a result of Defendants' breach.

96.     As a direct and proximate result of Defendants breach of the implied contract, Plaintiffs have been damaged in the amounts set forth herein and in amounts to be determined at trial.

97.     Plaintiffs are entitled to recovery pre- and post-judgment interest at the legal rate from Defendants or the amounts Plaintiffs are entitled to recover for Defendants' material and substantial breach of the implied contract.

**COUNT FOUR:  Gross Negligence, Punitive Damages, Willful and Wanton Conduct**

98.     Plaintiffs re-allege and adopt by reference the foregoing allegations as if fully set forth herein.

99.     The actions and inactions of the Defendants, as specifically alleged hereinabove, whether taken separately, or together, were of such character as to constitute a pattern or practice of gross negligence, willful or wanton conduct and/or malice resulting in damages and injuries to Plaintiff, EIRIN BRUHEIM and the horses owned by Plaintiff NORDIC LIGHTS FARM, LLC.

100.    Defendants, at all times relevant hereto, knew of the dangerous conditions created by the weather, yet decided to recommence the competition and put Plaintiffs in danger.

101.    In so acting, Defendants' conduct was grossly negligent, intentional, willful, wanton, recklessly indifferent and was without justification.

102.    Specifically, in recommencing the competition knowing about the unsafe weather conditions and knowing that the weather conditions had not sufficiently improved to permit safe riding, Defendant acted with knowledge that their actions were a breach of their duty to Plaintiffs.

103.    The conduct of the Defendants involved an extreme degree of risk, considering the probability and magnitude of potential harm to others.  In addition, the Defendants had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others.

104.    More specifically, Defendants consciously and/or purposefully engaged in wanton or willful conduct with knowledge that Defendants' actions were a breach of Defendants' duty to Plaintiff, EIRIN BRUHEIM and the horses owned by Plaintiff NORDIC LIGHTS FARM, LLC, and Defendants should be held liable in punitive and exemplary damages to Plaintiffs.

105.    Defendants knowingly, recklessly, and/or with knowledge that their actions were a breach of duty to Plaintiffs, caused serious bodily injury Plaintiff, EIRIN BRUHEIM. Defendants' acts were deliberate and purposeful because they acted with knowledge that their actions, specifically their desire to recommence the competition and avoid further delays, were breaches of duty to Plaintiffs and their actions caused serious bodily injury to Plaintiff, EIRIN BRUHEIM.  Defendants' acts were committed knowingly because Defendants were aware of the nature of their conduct or that the circumstances existed that may cause such injuries and, as a result of the conduct described herein, the serious bodily injury to Plaintiff, EIRIN BRUHEIM occurred.

106.    Each Defendant's gross negligence or willful or wanton conduct was a proximate cause of Plaintiffs' injuries and damages as set forth herein.  As a result of said willful or wanton

conduct, Plaintiffs assert a claim for punitive damages in an amount deemed fair and just by the jury and allowed by North Carolina law.

WHEREFORE, Plaintiffs respectfully pray unto the Court as follows:

1.     The Plaintiffs have and recover against all Defendants, jointly and severally, judgment for all damages as alleged herein, including punitive damages, pre-judgment interest at the highest legal rate allowed by law, and post-judgment interest at the highest legal rate allowed by law;

2.     That Plaintiffs have and recover against all Defendants, jointly and severally, all costs of this action, including Plaintiff's attorneys' fees as allowed by law;

3.     That the Plaintiffs have a trial by jury; and

4.     The Plaintiffs have and recover such other and further relief, both general and special, either at law or in equity that the Court may deem just and proper.


This the 6th day of July, 2018.

Respectfully submitted,

/s/ Gary J. Rickner
Gary J. Rickner
N.C. State Bar I.D. No.: 25129
email:  gjr@wardandsmith.com
For the firm of
Ward and Smith, P.A.
Post Office Box 33009
Raleigh, NC 27636-3009
Telephone:  919-277-9100
Facsimile:  919-277-9177

/s/ *Collen A. Clark*
Collen A. Clark
Texas State Bar No.
Email: *cclark@clarkmccrea.com*
For the firm of
Clark & McCrea
3500 Maple Ave., Ste 1250
Dallas, TX 75219
Telephone: 214.780.0500
Fax: 214.780.0501
*Counsel for Plaintiffs*
*CM/ECF Registration Pending*

4833-5328-1644, v. 1

21